Carlyle **BERNARD** and John Simino, Plaintiffs,

v.

**LOCAL 100, TRANSPORT WORKERS UNION OF AMERICA, Defendant.**

No. 94 Civ. 8964 (JGK).

United States District Court, S.D. New York.

Jan. 5, 1995.

---

Lewis, Greenwald, Kennedy, Lewis, Clifton & Schwartz by Lauren Esposito, Arthur Schwartz, New York City, for plaintiffs.

O'Donnell Schwartz Glanstein & Rosen by Manlio DiPreta, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KOELTL, District Judge:

The plaintiffs, Carlyle Bernard and John Simino, are members of the defendant, Local 100, Transport Workers Union of America ("Local 100"), which represents employees of the New York City Transit Authority and the Manhattan and Bronx Surface Transit Operating Authority. The plaintiffs belong to the Coney Island Overhaul Section of the Car Maintenance Division, which is one of fifteen Divisions of Local 100. Plaintiff Bernard was nominated by plaintiff Simino as a candidate for Recording Secretary of the Coney Island Overhaul Section, but has been kept off the ballot for the election now scheduled for Friday, January 6, 1995, because of his failure to comply with Local 100's bylaw limiting candidate eligibility to those members who have attended at least a certain minimum number of the meetings of the Section or Division during the year preceding the nomination.

The plaintiffs, relying primarily on cases decided under Title IV of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 et seq. (also known as the Landrum–Griffin Act), contend that the meeting attendance rule is an unreasonable restriction on the eligibility of candidates for union office. Title IV specifically deals with eligibility standards for certain union offices and imposes a detailed procedural process under which an election can only be challenged by the Secretary of Labor after it has occurred. Because the union position for which Bernard seeks to run is not covered by Title IV, the plaintiffs seek to read the standards of Title IV into Title I of the LMRDA, codified at 29 U.S.C. § 411 et seq. Title I requires that union members have "equal rights" to nominate

candidates and to vote in elections subject to "reasonable rules and regulations in such organization's constitution and bylaws." *See* 29 U.S.C. § 411(a)(1) (1985). One of the central issues in this case is the degree to which the dictates of Title IV—with respect to what constitutes reasonable eligibility requirements—apply under Title I.

The plaintiffs have moved for a preliminary injunction enjoining the union from barring Bernard from running for office and enjoining the union from conducting the January 6 election until a new ballot, reflecting Bernard's candidacy, is printed. For the reasons explained below, the Court denies the plaintiffs' motion.

## I.

The plaintiffs' complaint alleges that Local 100 violated Sections 101(a)(1) and (2) of Title I of the LMRDA, codified at 29 U.S.C. § 411(a)(1) and (a)(2), by refusing to permit Bernard to run for union office pursuant to an allegedly unlawful meeting attendance requirement. Bernard previously was nominated by the plaintiff John Simino and was listed as a candidate for Recording Secretary of the Coney Island Overhaul Section of the Car Maintenance Division of Local 100. Both plaintiffs are part of a slate of candidates affiliated with New Directions, a caucus within the union that opposes the incumbent officers. Simino is a candidate for Chair of the Coney Island Overhaul Section and his candidacy is unchallenged.

Section XIII(e) of Local 100's bylaws requires that candidates for Division or Section office have attended at least five or fifty percent of the combined regular Section and Division meetings held during the twelve month period immediately preceding the month in which nominations are made. Bernard cannot attend Section meetings because they are held after 4:00 p.m. and he works the 4:00 p.m. to 12:00 a.m. shift. Bernard can attend Division meetings because they are held at 10:00 a.m. and 4:00 p.m., but there are only four such meetings a year. The plaintiffs allege that the attendance requirement disqualifies over ninety-five percent of the members in the Car Maintenance Division from running for union office be-

cause they work the late shift which prevents them from attending the Section meetings.

The Transport Workers Union ("TWU") Constitution, which governs Local 100, provides that a member can receive credit for a meeting which the member is unable to attend because of job requirements provided that the member files a written statement of the reason for the non-attendance within thirty days of the meeting. *See* Article XV, Section 6, of the TWU Constitution. However, the plaintiffs' review of the records of the actual attendance and excuses filed for non-attendance at the Coney Island Overhaul Section and the Car Maintenance Division indicated that only about two per cent of the members were eligible to run for office in October of 1994 because only that percentage had attended sufficient meetings or filed excuses. (Simino Aff. dated Jan. 3, 1995 ¶ 6.) In the period between October, 1993 and October, 1994 there were four meetings of the Car Maintenance Division and nine meetings of the Coney Island Overhaul Section. (Simino Aff. dated Jan. 3, 1995 ¶ 5.) The plaintiffs allege that prospective candidates would have to plan far in advance of the election in order to run for office by attending meetings or submitting excuses.

In the Fall of this year, the Local 100 Executive Board gave another union member, Robert Johnson, an incumbent, credit for Section meetings that he did not attend. (Esposito Aff. ¶ 7.) (Like Bernard's, Johnson's work shift precludes his attendance at the meetings.) In October, Simino discussed Johnson's case with Local 100's union-wide Recording Secretary, Julia McMillon. McMillon agreed that other members, including Bernard, should and would get credit for Section meetings that they could not attend because of their work schedules in the same way that Johnson did. (Esposito Aff. ¶ 7.)

Simino nominated Bernard on October 7, 1994 and McMillon issued a ballot reflecting, *inter alia*, Bernard's candidacy. (Bernard Aff. ¶ 3.) The election was scheduled for December 1. However, on November 23, 1994, McMillon informed Simino that several members' qualifications were being challenged, including Bernard's, and she postponed the Section election until December

15, 1994. (Simino Aff. dated Dec. 13, 1994 ¶¶ 5–6.) A new ballot subsequently was posted that omitted Bernard's name. Members of the plaintiffs' slate wrote to the Local 100 Executive Board and to McMillon protesting Bernard's removal from the ballot and complaining that the treatment of Bernard was discriminatory given the treatment of Johnson. The plaintiffs' attorney subsequently wrote to the defendant reiterating the plaintiffs' objections. (Simino Aff. dated Dec. 13, 1994 ¶¶ 7–8.)

By letter dated December 14, 1994, the International Committee on Appeals ("ICA") of the TWU granted an appeal in Johnson's case, reversing the decision of the Local 100 Executive Board and disqualifying Johnson from running for an elective position because of his failure to comply with the meeting attendance requirement. He had neither attended a sufficient number of meetings nor submitted written excuses for his non-attendance.

Thus, the plaintiffs' original claim in their complaint that Bernard has been treated differently from Johnson and that, therefore, the meeting attendance requirement has been applied in a discriminatory manner, denying the equal rights to nominate and vote protected by Title I, is now moot. The meeting attendance requirement has been applied uniformly; it has prevented Johnson, as well as Bernard, from running for an elective position. There is no candidate that the plaintiffs have brought to the Court's attention who has not been required to comply with the meeting attendance requirement; indeed, all of the New Directions candidates, with the exception of Bernard, have met the requirement. And, all of the candidates from the New Directions slate currently are listed on the ballot with the exception of Bernard.

The plaintiffs, however, contend that even though the meeting attendance requirement is applied equally to all candidates, and even though all members have equal rights to nominate and vote for all candidates who are eligible, the meeting attendance requirement is unreasonable because it so severely limits the number of members who are eligible to run for office that it unreasonably limits the ability of members to nominate candidates and to vote for such candidates.

## II.

■ In order to obtain a preliminary injunction, a plaintiff must demonstrate irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in favor of the party requesting the preliminary injunction. *Waldman Publishing Corp. & Playmore Inc. v. Landoll, Inc.*, 43 F.3d 775 (2d Cir.1994) (citing, *inter alia, Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)); *Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir.1994) (same).

## III.

■ The plaintiffs allege that unless the Court issues an order requiring the union to permit Bernard to run for Recording Secretary and staying the election until a new ballot can be printed, Simino (who nominated Bernard) and other members. who wish to vote for Bernard will be irreparably harmed in that their equal rights to vote for and to nominate candidates of their choice, under Title I of the LMRDA, will be denied. The plaintiffs contend that if the election occurs prior to a resolution of this dispute, Bernard's candidacy will be prejudiced in a re-run election, resulting in the extended denial of full voting rights to members of the Coney Island Overhaul Section.

The plaintiffs have not demonstrated that they will be irreparably injured if the election proceeds. The Court will expedite this lawsuit and, if it is determined that Bernard should have been a candidate, the union will be required to hold another election. There is no demonstration on this record that the plaintiffs would be prejudiced by such a procedure. *See Ashley v. Retail Store Employees Union, Local 400*, No. 1264–73, 1973 WL 1224 (D.D.C. Oct. 12, 1973) (denying the plaintiff's motion for a temporary restraining order to stop the union from disqualifying the plaintiff's nomination, explaining that post-election remedies were sufficient to remedy any violation of the right to be a

candidate where no irreparable injury was demonstrated).

Indeed, Congress has determined, in the context of Title IV of the LMRDA, that the proper method of challenging candidate eligibility requirements is to allow the election to proceed, and then to overturn the election, if that is necessary.[1] The plaintiffs seek to use the standards under Title IV to invalidate the candidate eligibility requirement in this case. But those standards are applied under Title IV only after an election has occurred in order to invalidate the election. The plaintiffs have failed to show that they are irreparably injured by being placed in exactly the same position of attempting to invalidate an election as they would be if they were pursuing their claim under Title IV.[2]

## IV.

The plaintiffs have failed to demonstrate that they have a likelihood of succeeding on their claim that the meeting attendance requirement is invalid under Title I because it disqualifies over ninety-five percent of the members of the Car Maintenance Division from running for Section or Division office. Indeed, they have failed to demonstrate sufficiently serious questions going to the merits to make them a fair ground for litigation. The plaintiffs argue that the attendance requirement violates the Title I mandate, set forth in Section 101(a), that union members have "equal rights ... to nominate candidates," and "to vote in elections". *See* 29 U.S.C. § 411(a)(1) (1985). They argue that the attendance requirement has prevented Bernard from being a candidate, thus nullifying Simino's right to nominate him and the rights of the members to vote for the candidate of their choice. However, the protections of Title I have never been construed to encompass such a claim where all union members have an equal right to nominate and vote for eligible candidates, as they do in this case.

Section 101(a)(1) of Title I (Bill of Rights of Members of Labor Organizations) of the LMRDA provides:

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1) (1985).[3]

In *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1965), the Supreme Court explained that this Section "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." *Id.* at 139, 85 S.Ct. at 295.[4] The

---

1. Title IV provides, in pertinent part:
   The challenged election shall be presumed valid pending a final decision thereon ... and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.
   29 U.S.C. § 482(a)(2) (1985).

2. The plaintiffs could not cite any cases in which a court enjoined an election in the face of a challenge to an eligibility requirement that was uniformly applied to union members.

3. The plaintiffs' complaint also asserts a violation of Section 101(a)(2) of Title I which provides, in relevant part:
   Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views upon candidates in an election of the labor

   organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings[.]
   29 U.S.C. § 411(a)(2) (1985). Because the meeting attendance rule has been applied in a nondiscriminatory manner to bar both Bernard and Johnson from running for office, and because all of the other New Directions candidates are running for office, the plaintiffs have not pressed their claim that the failure to permit Bernard to run for office was an infringement of the right to expression of opinions under Section 101(a)(2).

4. The district court has jurisdiction over cases alleging violations of Title I under Section 102 of the LMRDA, codified at 29 U.S.C. § 412. Section 102 permits a private action by the aggrieved union member. It provides, in relevant part:
   Any person whose rights secured by the provisions of this subchapter have been infringed by

Supreme Court discussed the parameters of Title IV, in contrast with those of Title I. The Court observed that Title IV of the LMRDA, codified at 29 U.S.C. § 481 *et seq.,* pertains to issues of eligibility and qualifications· of candidates and not to the equal rights protected by Title I. *Id.* at 138, 85 S.Ct. at 295.

While Title I addresses pre-election and voting issues, Title IV provides an elaborate and exclusive post-election procedure aimed at effecting its goal of assuring free and democratic union elections. It regulates the frequency of elections, the distribution of campaign literature, the inspection of membership lists, the eligibility of candidates for office, campaign financing and the removal of officers guilty of serious misconduct. In contrast with the way in which a union member can bring a private suit in federal court alleging a Title I violation, *see* 29 U.S.C. § 412 (1985), Title IV's provisions may be enforced only by the Secretary of Labor after a union member pursues the union's internal channels and then files a complaint with the Secretary of Labor. Then, if the Secretary finds that there is probable cause to believe that a violation of the LMRDA occurred, the Secretary can bring suit in federal court to set aside the election. *See* 29 U.S.C. § 482 (1985).

In *Calhoon,* the Supreme Court held that the district court did not have jurisdiction over a case in which union members complained of both bylaws permitting union members to nominate only themselves and requirements of a certain length of membership and service at sea as a prerequisite to candidacy. 379 U.S. at 139, 85 S.Ct. at 295. The Court concluded that the plaintiffs' complaint was, essentially, that they could not nominate anyone they wanted, an issue squarely within Title IV in that it dealt with candidate eligibility, and that it did not implicate the equal right to nominate candidates protected by Title I. *Id.* at 138, 85 S.Ct. at 295. The Court explained: "Whether the eligibility requirements· set by the union's constitution and bylaws were reasonable and

valid is a question separate and distinct from whether the right to nominate on an equal basis given by § 101(a)(1) was violated." *Id.* at 139, 85 S.Ct. at 296. In *Calhoon,* because the same candidate eligibility qualifications were required of all members, the district court had no jurisdiction under Title I. *Id.*

Following *Calhoon,* courts consistently entertain challenges to eligibility requirements only when the plaintiff alleges disparate application of those requirements resulting in the denial of members' equal rights to nominate or vote. *See, e.g., Kupau v. Yamamoto,* 622 F.2d 449, 454 (9th Cir.1980) (uneven application of eligibility requirements states a cause of action under Title I of the LMRDA); *cf. Schonfeld v. Penza,* 477 F.2d 899, 902–03 (2d Cir.1973) (exclusion of a candidate, based on the uniform application of an eligibility requirement, did not infringe the equal rights protected by Title I); *Lawrence v. Utility Workers Union of America,* 509 F.Supp. 1151, 1159 (N.D.Ohio 1981) (challenge to the union's refusal to install a member as elected president because of the member's failure to meet the attendance requirement did not state a cause of action under Section 101(a)(1) where there was no evidence of uneven or discriminatory application of the rule and the court, therefore, had no jurisdiction).

This Court has limited challenges to candidate eligibility criteria under Title I to claims of unequal application of such criteria. In *Mangan v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 88 Civ. 9188, 1988 WL 80185, *2 (S.D.N.Y. July 27, 1988) (Haight, J.), the court held that it lacked subject matter jurisdiction over the plaintiffs' claim that an amendment to the union's constitution violated Title I. *Id.* at *1–2. The constitutional amendment provided that union members receiving pension benefits from a pension plan would be considered retired and would, therefore, be ineligible to hold union office. *Id.* at *1. In concluding that it did not have jurisdiction, the court explained: "[T]he dis-

---

any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.

29 U.S.C. § 412 (1985).

830

trict courts lack subject matter jurisdiction under Title I of [the] LMRDA over suits where a union's constitutional candidate-eligibility procedures are uniformly imposed." *Id.* at *2. Similarly, in *Laski v. International Organ. of Masters, Mates and Pilots,* 502 F.Supp. 134, 136 (S.D.N.Y.1980) (Motley, J.), the court held that it had no jurisdiction to enjoin the union from disqualifying certain members from running as candidates in a union election. *Id.* at 137. The court observed that the plaintiffs' case "essentially turn[ed] on questions of candidate eligibility[ ]" and that the plaintiffs did not have even a colorable claim of discrimination. *Id.* at 136.

The plaintiffs acknowledge that *Calhoon* appears to hold that this Court does not have jurisdiction over their claim because their claim relates to eligibility requirements that are uniformly enforced. They argue, however, that the Court should follow cases finding Title I violations even without disparate treatment by a union.

However, the cases on which the plaintiffs rely involve direct interference with the Title I equal right either to nominate or to vote, which does not exist in the present case. For example, in arguing that they set forth a sufficient claim under Section 101(a), the plaintiffs rely on *Turner v. Dempster,* 743 F.2d 1301 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1361, 84 L.Ed.2d 382 (1985). In *Turner,* the court held that a challenge to a rule permitting only union members who had worked on a ship at sea for six years to vote on union-related matters set forth a sufficient claim under Section 101(a)(1), even absent uneven enforcement of union rules. *Id.* at 1302. The court reasoned that the plaintiff had asserted a denial of a voting right given to another member or class of members of the union. *Id.* at 1302–03.

The plaintiffs' reliance on *Turner* is misplaced. *Turner* dealt with voting rights which clearly fall within the protection of Title I; in fact, the *Turner* court explicitly noted that the plaintiff in that case did not challenge candidate eligibility requirements. *Id.* at 1302. There was direct interference with the equal right to vote because classes

of members were not permitted to vote. In the present case, unlike in *Turner,* the plaintiffs do challenge a candidate eligibility requirement which affects the rights to nominate and vote only indirectly; they argue that because of the unreasonable eligibility requirement, all members cannot nominate or vote for whom they wish. They do not complain of a requirement that directly affects the right to vote, as in *Turner.*

The other cases relied upon by the plaintiffs are similarly distinguishable. *See, e.g., McGinnis v. Local Union 710, Int'l Bhd. of Teamsters,* 774 F.2d 196, 203 (7th Cir.1985) (in-person voting requirement, while not facially discriminatory, was "unreasonable" under Title I because it had a discriminatory impact on members who lived far away), *cert. denied,* 475 U.S. 1121, 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986); *Alvey v. General Elec. Co.,* 622 F.2d 1279, 1287 (7th Cir.1980) (the equal right to vote was violated where only members who had paid their dues could vote on a proposal affecting laid off members' seniority rights and laid off members were forbidden from paying their dues); *Bunz v. Moving Picture Mach. Operators' Protective Union Local 224,* 567 F.2d 1117, 1122 (D.C.Cir.1977) (equal right to cast meaningful votes was violated where the union raised the percentage of votes necessary to defeat a union measure above that set forth in the union's bylaws); *Navarro v. Gannon,* 385 F.2d 512, 520 (2d Cir.1967) (affirming the issuance of a preliminary injunction by the district court, explaining that permitting an international union official to be present at a local union meeting would violate the members' right of free discussion under Section 101(a)(2) even absent evidence of discrimination), *cert. denied,* 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968); *Sheldon v. O'Callaghan,* 497 F.2d 1276, 1282–83 (2d Cir.) (Section 101(a)(1) was violated despite universal suffrage when the union refused to allow opponents of a change to the union constitution to mail their views to the membership), *cert. denied,* 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974); *Bauman v. Presser,* 117 L.R.R.M. 2393, 2400, 1984 WL 3255 (D.D.C. Sept. 19, 1984) (balloting procedure employed by the union did not provide mem-

bers with sufficient notice and information regarding the subject matter of the vote, leaving the plaintiffs without an adequate opportunity to have a meaningful and informed vote in violation of Section 101(a)).

In *Black v. Transport Workers Union of America*, 454 F.Supp. 813 (S.D.N.Y.) (Gagliardi, J.), *aff'd without op.*, 594 F.2d 851 (2d Cir.1978), Judge Gagliardi carefully reviewed *Calhoon* and controlling Second Circuit precedent when he dismissed a complaint under Title I which sought to invalidate a union practice of "package ratification". *Id.* at 821. Pursuant to this practice, the union had aggregated the votes of different segments of the union in a vote on ratification of a collective bargaining agreement. The court concluded that *Calhoon* stood for the proposition that Section 101(a)(1) "protects the right to vote only against relatively direct attack[.]" *Id.* In the present case, there is no such "relatively direct attack" on the plaintiffs' right to vote.

Finally, the plaintiffs attempt to sweep their claim within the protection of Title I by arguing that because Section officers are not "officers" within the meaning of Title IV of the LMRDA, and that Title IV, therefore, does not apply, they can bring their claim under Title I.[5] The plaintiffs acknowledge the unprecedented nature of their claim, stating that this action presents "a novel, though fully cognizable question, to wit, whether a meeting attendance rule of the type which is generally found unreasonable under Title IV ... also violates analogous rights under Title

I ... when enforced in an election not subject to the provisions of Title I." (Plaintiffs' Reply Mem. at 3.)[6]

The plaintiffs rely on two cases decided by the Court of Appeals for the Sixth Circuit in support of their argument that their claim is cognizable under Title I—*Knisley v. Teamsters Local 654*, 844 F.2d 387 (6th Cir.1988), and *BLE Int'l Reform Comm. v. Sytsma*, 802 F.2d 180 (6th Cir.1986). In *Knisley*, the court explained that because the Secretary of Labor had determined that the office of business agent was not among the offices covered by the election regulations contained in Title IV, the exclusivity provisions of Title IV were not applicable to the plaintiff's challenge to the results of an election based on the union's refusal to accept the plaintiff's nomination. *Id.*, 844 F.2d at 391. The court explained that "[t]o hold otherwise would result in a 'whipsaw' effect whereby plaintiffs would be denied a remedy under either Title I or Title IV." *Id.* at 391.

In *Sytsma*, the plaintiff challenged the balloting procedure used in a recall election of an international union officer. 802 F.2d at 191. The court held that the district court erred in granting the defendant's motion for summary judgment and that the district court had jurisdiction over the plaintiff's claim under Title I because Title IV did not govern the recall election of an international union officer. *Id.*

As the plaintiffs conceded at oral argument, however, these cases stand only for the proposition that where there exists no claim

---

5. For purposes of the LMRDA, an "officer" is defined as "any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body." 29 U.S.C. § 402(n) (1985); *see also* 29 C.F.R. §§ 452.16–452.22 (1994). The union has maintained, and the plaintiffs agree, that Section officers do not perform sufficient executive functions to fall within this definition.

6. Both Title I and Title IV contain "reasonableness" requirements, although in slightly different contexts. Title I allows the equal rights to nominate, vote, attend membership meetings and participate in meetings to be limited by "*reasonable rules and regulations* in such organization's constitution and bylaws." 29 U.S.C. § 411(a) (1985) (emphasis added). Title IV provides that "[i]n

any election required by this section ... a *reasonable opportunity* shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to *reasonable qualifications uniformly imposed*)[.]" 29 U.S.C. § 481(e) (1985) (emphasis added). The "reasonable qualifications" standard under Title IV has been used to invalidate meeting attendance requirements for candidate eligibility that were somewhat more onerous than those at issue in this case. *See, e.g., Local 3489, United Steelworkers of America v. Usery*, 429 U.S. 305, 310, 97 S.Ct. 611, 615, 50 L.Ed.2d 502 (1977); *Marshall v. Local 1402, Int'l Longshoremen's Assoc. of Tampa*, 617 F.2d 96, 99 (5th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980).

under Title IV because Title IV does not apply, a plaintiff is not precluded from bringing an otherwise legitimate claim under Title I. They do not stand for the proposition that because an election does not fall within Title IV, a plaintiff necessarily possesses a claim under Title I. In this case, the plaintiffs have failed to show the likely existence of a claim under Title I. Therefore, *Knisley* and *Sytsma* do not establish such a claim. In *Black*, discussed above, the court reached a similar conclusion. Finding no discrimination by the union against the plaintiffs in the exercise of their right to vote on a collective bargaining agreement, the court held that the plaintiffs failed to state a claim under Title I of the LMRDA. 454 F.Supp. at 824. The court expressly rejected the plaintiffs' argument that the fact that the vote was not covered by Title IV should influence its interpretation of the parameters of Title I. *Id.* at 822. The court stated that in *Calhoon*, the Supreme Court had "clearly implied that § 101 must be read narrowly whether or not the actions complained of were remediable under Title IV." *Id.*

## V.

Finally, the plaintiffs have failed to demonstrate that the balance of the equities tips decidedly in their favor. The cases on which the plaintiffs primarily rely to support their claim of unreasonableness are Title IV cases; however, because Title IV does not apply, the plaintiffs are not required to adhere to the detailed procedures required under Title IV. Because the plaintiffs could not enjoin this election if Title IV applied and because they would be required to pursue a post-election challenge by the Secretary of Labor in that case, the equities require that they not be permitted to enjoin the election. A contrary conclusion would permit the plaintiffs to borrow only the portions of Title IV jurisprudence that support their position, while ignoring the procedural requirements that otherwise would apply and would prevent their obtaining an injunction.

While the plaintiffs could not pursue all of the remedies under Title IV because this election is not governed by Title IV, they should at least be required to exhaust the union's internal remedial procedure in this case. Section 101 of Title I provides that a union member "may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof[.]" 29 U.S.C. § 411(a)(4) (1985). Requiring exhaustion would be appropriate in this case, particularly since the plaintiffs need only wait for four months and they would have been required to exhaust union administrative remedies if the election were covered by Title IV.

The plaintiffs argue that, given the criteria courts consult in deciding whether the exhaustion requirement should apply, they should not be required to exhaust internal union procedures. They note that the major elements that courts consider are whether the violations of federal law are clear and undisputed, whether the internal remedy is adequate and whether resort to internal union remedies would be futile. *See, e.g., Detroy v. American Guild of Variety Artists*, 286 F.2d 75, 81 (2d Cir.), *cert. denied*, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961); *Bee v. Local 719, United Auto Workers*, 744 F.Supp. 835, 837 (N.D.Ill.1990); *Zaloga v. Ruggiero*, 529 F.Supp. 443, 444 (E.D.N.Y. 1982); *Cefalo v. International Union of District 50 United Mine Workers of America*, 311 F.Supp. 946, 953–54 (D.D.C.1970).

As discussed above, the plaintiffs have not established a clear violation of federal law. And, while there is a vigorous dispute between the parties as to whether the ICA can consider the issue of whether the meeting attendance requirement is unlawful, another union member has appealed that issue to the ICA in a different case, (Letter from Schermerhorn to Kerrigan of Jan. 3, 1995 at 2), and the union maintains that the ICA has the capacity to consider the issue on appeal, (Kerrigan Aff. ¶ 10). Moreover, the ICA acted with great speed in the Johnson appeal and the plaintiffs should also be able to obtain a decision quickly on any appeal concerning the meeting attendance requirement. In any event, Title I would only require a delay of no more than four months. Balancing the equities, the Court concludes that the

union should have the same opportunity to consider the validity of its own rule—before the Court intervenes—that it would have if this case were governed by Title IV.

## VI.

For all of the foregoing reasons, the plaintiffs' motion for a preliminary injunction is denied. The parties are directed to contact the Deputy Clerk to set up a status conference at which a schedule for further proceedings will be established.

**SO ORDERED.**