Peter VITRANO et al., Plaintiffs,

v.

Ray MARSHALL, Secretary of Labor, Defendant.

Civ. A. No. 80–0799.

United States District Court, District of Columbia.

Jan. 22, 1981.

Arthur L. Fox II, Alan B. Morrison, Washington, D. C., for plaintiffs.

Mark C. Rutzick, Thomas R. Kline, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This matter is before the Court on the motion of the defendant, the Secretary of Labor (hereinafter "the Secretary"), to dismiss the complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment. In response, the plaintiffs, members of various local unions of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("IBT" or "the Union"), filed a cross-motion for summary judgment.

After lodging internal union disciplinary charges against the IBT's General President Frank E. Fitzsimmons in April 1977 for alleged serious misconduct in union office, the plaintiffs attempted unsuccessfully to

prosecute those charges which were dismissed by the Union in February, 1979. Thereafter, on July 25, 1979, the plaintiffs sought to invoke action under 401(h) of the Labor-Management Reporting Disclosure Act of 1959 (hereinafter "LMRDA" or the "Act"), 29 U.S.C. § 481(h), and requested a hearing, to be held pursuant to the procedures set out in 29 C.F.R. § 417, "to determine the adequacy of procedures provided in the Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America for removing elected officers guilty of serious misconduct." They petitioned the Secretary to conduct a secret ballot referendum among the Union's membership to determine whether General President Fitzsimmons should be removed from office for that alleged misconduct.

The complaint in this action relates that plaintiffs Greco and Rollins were members of the class represented by plaintiffs Vitrano, Berryhill, and others in their petition to the Secretary. It is contended that Greco attempted unsuccessfully to intervene in the proceedings before the Union and that Rollins "executed a petition subscribing to disciplinary charges seeking Mr. Fitzsimmons' removal from union office." Complaint, para. 5.

On October 22, 1979, the Secretary issued a Statement of Reasons for Dismissing the Petition, without investigation of the allegations, asserting that the Secretary lacked authority to grant any relief because § 401(h) of the Act does not cover the removal of an officer of an international labor organization.

Plaintiffs then filed suit asking this Court to declare that the Secretary's interpretation of § 401(h) is erroneous in that that section of the Act does give the Secretary authority to initiate and conduct recall proceedings for union officials who do not hold "local" union positions, that is, for officials of national and international labor organizations.

Finding that the Secretary's interpretation of § 401(h) is consistent with the plain meaning of its language, its legislative history, and the purpose of the LMRDA, the complaint must be dismissed.

■ Although plaintiffs argue that acceptance of the Secretary's interpretation would run counter to Congress' avowed intent in passing the LMRDA, to eliminate corruption as much as possible at all levels of union activity, their contention is contrary to the plain meaning of the statutory words. By its clear language, § 401(h) limits its application to officials of *local* labor organizations. § 401(h) provides:

> If the Secretary, upon application of any member of a *local labor organization*, finds ... that the constitution and by-laws of *such labor organization* do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, such officer may be removed, for cause shown and after notice and hearing, by the members in good standing voting in a secret ballot conducted by the officers of *such labor organization* in accordance with its constitution and bylaws insofar as they are not inconsistent with the provisions of this subchapter.

29 U.S.C. § 481(h) (emphasis supplied).

Precisely and unambiguously stated, only a member of a local organization may invoke this section. The term "labor organization," twice repeated in this section, is each time modified by the word "such," undoubtedly referencing the first mention of the term "labor organization" where it is boldly modified by the word "local." The procedure set out then applies, by its own terms, to local labor organizations.

The parties vigorously dispute the impact of legislative history on the question before the Court. Plaintiffs argue that Congress did not intend to limit so narrowly the Secretary's power to order a recall election. The defendant contends that the Congressional activity strongly supports his interpretation of the final legislation. The LMRDA, it must be recalled, was the product of a conference between the Houses of Congress, each of which had passed separate labor reform bills (S.1555 and H.R. 8342). With regard to the provision for

removal of union officials which became § 401(h) of the Act, the conferees adopted verbatim the language of the Senate bill. The House version differed substantially in that it covered *all* labor organizations and provided for enforcement by private court action rather than through the Secretary of Labor,[1] a distinction not unnoticed by the conferees.

Perhaps the most useful document illuminating Congressional purpose is a Conference Report which bears on the final draft that is used by the conferees in explaining to the entire Congress why the bill should pass. *See American Jewish Congress v. Kreps*, 574 F.2d 624, 629 n. 36 (D.C.Cir. 1978). The Statement of the Managers on the part of the House attached to the Conference Report acknowledges the differences between the two bills under discussion here:

> Subsection (b) of the conference substitute deals with removal of officers guilty of serious misconduct. *The Senate bill* provides that where the Secretary, *upon application of a member of a local union*, finds after a hearing that the constitution and bylaws of the *local* union do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, such officer may be removed, for cause shown and after notice and opportunity for a hearing, by the members of the union voting in a secret ballot conducted by the officers in accordance with its constitution and bylaws insofar as they are not inconsistent with this title.
>
> The House amendment provides a procedure which is similar, except that the Federal courts, rather than the Secretary of Labor would determine whether the

constitution and bylaws provide an adequate procedure for the removal of elected officers guilty of serious misconduct. *The House amendment applies to all unions, not just to locals.*

> The conference substitute adopts the provisions of the Senate bill, and also the final subsection in the Senate bill which gives the Secretary the duty to make rules prescribing minimum standards and procedures for determining the adequacy of removal procedures.

H.R.Rep.No.1147, 86th Cong., 1st Sess. (1959), *reprinted in* I Leg.Hist. at 938 (emphasis added). Additionally, Senator Barry Goldwater, a conference participant (who also had been the lone opponent when S.1555 passed the Senate 90–1), in discussing the differences between the House and Senate versions of the legislation, specifically highlighted the issue, "Differences: The House removal provision applies to all elected officers, while the Senate provision applies only to officers of locals." *See* II Leg.Hist. 1359.

The LMRDA erupted, after studied consideration, from the investigations of labor racketeering which left the country and its Congressional representatives in a sense of stunned outrage and concern about the "conduct of those occupying positions of trust and power in the American labor movement. There can, in short, be little doubt that Congress meant to lay its hands upon irregular internal affairs," *Nelson v. Johnson*, 212 F.Supp. 233 (D.Minn.1962), *aff'd.* 325 F.2d 646 (8th Cir. 1963), to eradicate corruption, and to curb officials' abuse of power.

Then-Senator Sam Ervin, one of the principal sponsors of S.1555, (popularly known as the Kennedy-Ervin bill), which provisions

---

**1.** In pertinent part, that rejected House provision provided:

> If upon petition of any member of a labor organization, a district court of the United States finds the constitution and bylaws of such labor organization do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, a district court may order that for the cause shown and after due notice and opportunity for a hearing, an election shall be conducted by the officers of such labor organization

among the members in good standing, voting by secret ballot, and in accordance with its constitution and bylaws insofar as they are not inconsistent with the provisions of this title, for the purpose of determining whether such officer shall be removed from office. H.R.8342 (Sec. 401(g)), 86th Cong., 1st Sess. (1959), reprinted in I NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 726–27 [hereinafter referred to as Leg.Hist.].

were finally adopted by the Conference, noted that the findings by the McClellan Senate Rackets Committee of the abuse of power "shocked the conscience of the Nation," 105 Cong.Rec. 5489; II Leg.Hist. at 1033. In the language of then-Senator John F. Kennedy's section-by-section analysis of S.1555, Section 401(g) and (h):

> [It] provides that if the Secretary upon application of a member of a local labor union finds ... that the union's constitution does not provide for the removal of an officer guilty of serious misconduct, the officer may be removed, by the members voting in a secret ballot vote. II Leg.Hist. at 1261; see also S.Rep.No.187 at 47, 86th Cong., 1st Sess. (1959); I Leg.Hist. at 443.

Plaintiffs insist that "Congress never clearly focused upon and intelligently resolved the ambiguities in a manner which would justify the narrow construction afforded by the Department of Labor", Pls.' Memo in Support of Summary Judgment at 8, and that "even the sponsors of S.1555 which contained a precise recall provision ultimately enacted (April 25, 1959), failed to focus upon the purported restrictions in the scope of the recall provision." Id. 9. Yet, the House Conferees' Report, supra, dated September 3, 1979, the day before the House adopted the Conference Bill and sent it to the President, clearly stated that the provisions of the Senate Bill were adopted by the Conference substitute and noted inter alia, that:

> The Senate Bill provides that where the Secretary upon application of the local union, finds after a hearing that the constitution and bylaws of the local union do not provide an adequate procedure for the removal of an elected officer found guilty of serious misconduct, said officer may be removed ...
>
> \*   \*   \*   \*   \*   \*
>
> The House Amendment applies to all unions, not just the locals.

Professor Archibald Cox, consultant to the draftsmen and sponsors of the Act, has, as plaintiffs note, observed that many sections of the LMRDA "contain calculated ambiguities or political compromises essen-tial to secure a majority." (emphasis added). Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 852 (1960).

■ The plain meaning of a provision of statute should be followed unless it is clearly at variance with the purpose of the statute and would lead to an absurd result. See, TransAlaska Pipeline Rate Cases, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978). Fairly read, the overall legislative history strongly indicates that Congress knowingly selected a limited provision concerning officer recall procedures. It is not unlikely that pragmatic consideration here resulted in the political compromise suggested by Professor Cox.

It would be neither plausible nor posited by the legislative history to accept plaintiffs' premise that many months of extraordinarily intensive committee investigation and oversight, subsequent draftsmanship and multiple amendments, "most probably" resulted in the "local" limitation being "unwittingly carried over during the redrafting process ...."

The Secretary's interpretation of the provision, in consonance with its plain meaning, supported by the legislative history of LMRDA, is not inconsistent with the Act's remedial purpose which recognizes that it is in the public interest for the Federal Government to protect employees' rights to choose their union representatives.

Nonetheless, to accept plaintiffs' representation that the statute would be frustrated of its essential "democratic tools need(ed) to oust corrupt union leadership," Pls. Memo. in Support of Summary Judgment at 16, were the officer recall provision limited to officials of local unions, shrouds distinctions drawn by the Act between national, international, local and intermediate bodies. Not every remedy provided by the Act applies to each level of union. Where, for example, national and international unions must hold officer elections at least once every five years (§ 401(a)), local labor unions must elect their officers at least once every three years (§ 401(b)), and intermediate bodies at least once every four years (§ 401(d)).

The result being the same, whichever standard of review is utilized becomes of no moment here. Measured by the accord of significant weight, indeed deference, to the Secretary's Statement of Reasons, *supra*, and in evaluating the propriety of the Secretary's decision, it is evident that the Secretary's stance lacks either capriciousness or irrationality, and is grounded in reasonableness. Were the Court to have decided the issue, as the plaintiffs request, as "a purely legal question and [an] interpret[ation of] some very simple, non-technical statutory language in light of the legislative history and congressional objectives, the defendant's position would still prevail.

It is to the Congress of the eighties, or beyond, that plaintiffs must turn anew to apply the officer recall provision to all and any level of unions. The Eighty-sixth Congress has mandated otherwise.

IT IS HEREBY ORDERED

Accordingly, the motion of Ray Marshall, Secretary of Labor, to dismiss the complaint for failure to state a claim upon which relief can be granted, be and it hereby is granted and the motion of the plaintiffs for summary judgment be and it hereby is denied.

This cause is dismissed with prejudice.