BLE INTERNATIONAL REFORM COMMITTEE, et al., Plaintiffs-Appellants,

Secretary of Labor, Intervenor,

v.

John F. SYTSMA, et al., Defendants-Appellees.

No. 85–3933.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 4, 1986.

Decided Sept. 25, 1986.

Jeffrey Freund, Bruce R. Lerner, argued, Bredhoff & Kaiser, Washington, D.C., Alan S. Belkin, Shapiro, Turoff & Gisser, Cleveland, Ohio, for plaintiffs-appellants.

Carol A. DeDeo, Barbara Johnson, argued, U.S. Dept. of Labor, Office of Sol., Washington, D.C., for intervenor.

Harold A. Ross, argued, Ross & Kraushaar, Cleveland, Ohio, for defendants-appellees.

Before KEITH and MERRITT, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

This case presents the question, as an issue of first impression, of whether a challenge to the outcome of an international recall election must initially be filed with the Secretary of Labor pursuant to Title IV of the Labor-Management Reporting and Disclosure Act (LMRDA or Act). The plaintiffs-appellants filed a complaint in federal district court challenging the validity of such an election under Titles I and V of the LMRDA. The district court granted summary judgment for the defendants holding that any post-election challenge involving union officers was a Title IV claim subject to the exclusive remedy in Title IV over which the court lacked subject matter jurisdiction. For the following reasons, we find that a challenge to an international recall election is not cognizable under Title IV and, accordingly, that the district court erred in granting summary judgment for the defendants.

## I.

Plaintiffs are individual members of the International Brotherhood of Locomotive Engineers (BLE),[1] as well as the BLE International Reform Committee and Local 286, organizational plaintiffs which are suing on behalf of other BLE members. The defendants are the President, Vice-President and General Secretary-Treasurer of

---

1. Any reference to the BLE will be a reference to the International Union.

the BLE, and the BLE. The following allegations were set out in the amended complaint and were accepted as true by the district court.

The BLE is an international union comprised of approximately 32,000 members and 700 local divisions whose officers are elected pursuant to the terms of its constitution. The BLE constitution also contains a provision whereby BLE officers can be recalled from office if twenty-five percent of the active membership sign a petition to conduct a recall election for a particular officer, and then a majority of votes are cast during the election in favor of the officer's recall. This recall provision also contains the mechanism for replacing the recalled officer. When petitions are circulated for an officer's removal, nominations for a replacement officer can be successfully made by two percent of the active membership. The nominees' names are then placed on the recall ballot; if a recall is approved by majority vote, the nominee with the most votes becomes the new officer.

On August 7, 1984, a recall petition was circulated pursuant to the provisions of the International constitution with the aim of removing from office BLE President John Sytsma, one of the defendants in this law suit. Prior to the circulation of the recall petition, plaintiffs allege that Sytsma distributed a letter to every member of the BLE asking for their support in defeating the recall. The letters were printed on official BLE stationery and were distributed with the use of BLE funds. It was further alleged that while the petitions were being circulated, Sytsma distributed other letters to the various division officers, and had articles included in the BLE newspaper, all of which were aimed at defeating the recall. The letters were also printed on official BLE stationery and were prepared and distributed with the use of BLE funds.

On August 16, 1984, Sytsma conducted a meeting in Cleveland, Ohio for various BLE representatives. Plaintiffs allege that the meeting, which was subsidized with BLE funds, was orchestrated so as to gather support to defeat the recall and to intimidate representatives into resisting the recall. Similarly, plaintiffs contend that other meetings and activities were organized solely to resist the recall and were funded with BLE monies.

Despite these efforts, a requisite number of signatures were obtained to force the union to conduct a recall election. The election took place by mail between November 1984 and January 1985; the balloting closed on January 25, 1985. Under the procedures adopted for counting ballots, members were required to return their ballots to the secretary-treasurers of their local divisions by January 25th. Each local division was required to count the ballots which were cast in its division and then mail the final tally sheet to the accounting firm of Kubinec and Burg in Cleveland, Ohio for final counting.[2] Tally sheets were to be received in Cleveland by 4:30 p.m. on February 25th. The recall was declared defeated by 189 votes; 5,387 of the votes which were counted were against the recall, and 5,198 votes were in favor of the recall. The votes from 141 of the local divisions, however, were never counted. Plaintiffs allege that the tally sheets from 100 local divisions were never received for a final counting, other tally sheets were not recorded because they differed in form from the tally sheets which were forwarded to the local divisions, at least 154 ballots were impounded at the local level and were never included on the tally sheets, and another 270 ballots were not recorded because they were mailed directly to either the BLE office or the office of Kubinec and Burg. The plaintiffs allege that many of the uncounted ballots were properly cast and that the defendants did not properly investigate the absence of particular ballots or the propriety of impounding some

---

**2.** Candidates were allowed to have observers present during the counting of ballots; Sytsma requested local union officers to act as his ob-servers. Plaintiffs allege that these officials were required to remain neutral and that Sytsma's request amounted to intimidation.

ballots. It was further alleged that the voting process did not ensure voter secrecy because union members were only provided with one voting envelope which contained the member's name on the outside of the envelope.

After pursuing internal union procedures without satisfaction, plaintiffs filed a complaint on June 26, 1985, in the United States District Court for the Northern District of Ohio alleging violations of Titles I and V of the LMRDA and Ohio contract law. The plaintiffs challenge the validity of the recall election on the grounds that the failure to count certain ballots and the lack of a secret ballot constitute violations of section 101 of the Act, 29 U.S.C. § 411 (Title I). The complaint further alleged that some of Sytsma's actions taken in support of his candidacy constituted intimidation in violation of section 101. Plaintiffs also allege that the defendants' use of funds to resist the recall violated section 501 of the Act, 29 U.S.C. § 501 (Title V). For relief, plaintiffs requested that the election be set aside, an accounting be conducted and damages and attorney's fees be awarded. Jurisdiction was alleged to exist pursuant to 29 U.S.C. §§ 412 and 501(b), as well as 28 U.S.C. §§ 1331 and 1337.

On July 19, 1985, defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1); defendants asserted that the district court lacked subject matter jurisdiction to entertain the claims because the claims were cognizable under Title IV of the LMRDA, 29 U.S.C. §§ 481 *et seq.* Defendants maintained that Title IV provides an exclusive remedy for challenging Title IV violations whereby only the Secretary of Labor may file a civil suit in federal district court to set aside an election, *see* 29 U.S.C.

§§ 482, 483, and since the plaintiffs had failed to file their initial complaint with the Secretary, the district court could not entertain the claims.

Plaintiffs responded to this motion, arguing that a challenge to a recall election involving an international union officer was not covered by Title IV. Rather, plaintiffs asserted that Title IV principally governed only periodic, regularly scheduled elections of union officers. In support of their argument, plaintiffs proffered a letter, dated August 29, 1985, from Richard Hunsucker, the Director of the Office of Elections, Trusteeships and International Union Audits, United States Department of Labor, which stated that the Department of Labor would not accept the complaint challenging the outcome of a recall election of national or international union officers.[3]

On October 9, 1985, the district court ruled in favor of the defendants, holding that the claims were, in essence, Title IV claims over which the court lacked jurisdiction.[4] The court concluded that Title IV governed any election of union officers, and that a post-election challenge was consequently subject to the exclusive remedy provision of Title IV. The court then concluded that the complaint involved in this case amounted to a post-election challenge governed by Title IV, stating:

> Substantively, plaintiffs present a post-election challenge under Title IV. They claim a violation of their right to a secret ballot which is a right that Title IV guarantees. 29 U.S.C. § 481(a). They allege that the defendants improperly interfered with their right to vote by intimidating union officials and not counting all the ballots cast. These are rights

---

**3.** Hunsucker's letter was written in response to an inquiry made by plaintiffs' counsel and stated in relevant part:

> You asked whether Title IV of the Labor-Management Reporting and Disclosure Act, as Amended (LMRDA) applies to a referendum recall election. The LMRDA does not regulate the recall of national and international union officers. The LMRDA election procedures deal only with the regular, periodic election of officers. Therefore, a complaint

with respect to a recall election would not be accepted by the Department of Labor.

**4.** The court apparently construed the defendants' motion to dismiss as a motion for summary judgment, and granted summary judgment for the defendants. Since the issue on appeal is resolved solely by statutory construction, our standard of review is the same whether the district court dismissed the complaint or granted summary judgment.

which Title IV assures. 29 U.S.C. [§ 481](e). Finally, they aver an improper use of union funds during the election, but it is Title IV which prohibits such expenditures. 29 U.S.C. § 481(g). The court did not accept the proposition that Title IV regulates only periodic, regular elections, despite the Secretary's interpretation supporting that proposition. *See* 29 C.F.R. § 452.25. Instead, the court reasoned that the plain language of the statute and the legislative history [5] indicated that the Title IV requirements apply to recall elections, and the Title IV exclusive remedy applies to any post-election challenge.

The plaintiffs filed notice of appeal on November 5, 1985. Plaintiffs, relying on the district court's decision, also filed a complaint with the Secretary challenging the recall election's outcome. The Secretary refused to consider the complaint on jurisdictional grounds, despite the district court's decision, and proceeded to intervene in the appellate proceedings of this lawsuit.[6] Both the Secretary and the appellants argue that the district court erred in construing the appellants' challenges to the recall election as Title IV claims. Alternatively, the appellants argue that it was error to dismiss their Title V claims relating to a breach of fiduciary duty and their state contract claims, even if the court correctly concluded that it lacked jurisdiction to examine the validity of the recall election's outcome.

## II.

Title I of the LMRDA, and specifically section 101, 29 U.S.C. § 411, is the "Bill of Rights" for union members. In relevant part, section 101 provides that union members "shall have equal rights ... to nominate candidates, [and] to vote in elections or referendums of the labor organization ...," 29 U.S.C. § 411(a)(1), and that union members "shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions...." *Id.* at § 411(a)(2).[7] Section 102 is the enforcement provision for Title I violations and provides in part that "[a]ny person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." 29 U.S.C. § 412.

Title V of the Act, which sets forth the fiduciary duties of union officers and other union representatives, provides in relevant part that it is the duty of the union officers "to hold [the labor union's] money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder...." 29 U.S.C. § 501(a). The enforcement mechanism for Title V violations essentially provides a derivative action whereby union members, after exhausting certain procedural requirements,[8] may sue the offending union representative in federal district court, or state court, "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization." *Id.* at § 501(b).

Title IV of the LMRDA, 29 U.S.C. §§ 481 *et seq.*, is a provision which specifically addresses the election of union officers on

---

5. The district court, however, did not review the legislative history discussed *infra*, but relied on language in Supreme Court cases which were not confronted with the exact issues before us.

6. As a protective measure, the plaintiffs also filed a complaint against the Secretary challenging the Secretary's refusal to recognize jurisdiction as being an arbitrary and capricious act and an abuse of discretion.

7. Other subsections of section 101 include provisions relating to the rates and imposition of dues, initiation fees and special assessments, 29 U.S.C. § 411(a)(3), the protection of the union member's right to sue, *id.* at § 411(a)(4), and the protection against improper disciplinary action. *Id.* at § 411(a)(5).

8. The member must have requested, and been refused, appropriate relief from the labor organization, officers or governing board. 29 U.S.C. § 501(b).

the local, national and international level and sets forth the terms of office and election procedures. This Title provides that elections for national or international union officers must occur "not less often than once every five years ...," 29 U.S.C. § 481(a), and elections for local union officers must occur "not less often than once every three years...." *Id.* at § 481(b).[9] Elections of local officers must be conducted "by secret ballot among the members in good standing," *id.*, whereas elections of national or international union officers may occur by secret ballot among the members *or* at a "convention of delegates chosen by secret ballot." *Id.* at § 481(a). The Title also addresses requirements concerning the distribution of campaign literature to union members and use of membership lists in this regard, and it grants candidates the right to have an observer at the polls and at the counting of ballots as safeguards for fair elections. *Id.* at § 481(c). A further provision addresses the nomination and eligibility of candidates. *Id.* at § 481(e). Moreover, Title IV declares as unlawful the use of union monies "to promote the candidacy of any person in an election *subject* to the provisions of this subchapter." *Id.* at § 481(g) (emphasis added). In essence, therefore, Title IV creates a requirement for conducting elections of union officers within a set period of time and specifies procedural safeguards to insure fair elections. *See* S.Rep. No. 187, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Ad. News 2318, 2336 (Title IV provides a "legal guaranty of free and periodic elections"); H.R.Rep. No. 741, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Ad. News 2424, 2438 (same). If a union "conform[s] with these [minimum] standards, they are free 'to run their own elections.'" *United Steelworkers of America v. Sadlowski*, 457 U.S. 102, 117, 102 S.Ct. 2339, 2348, 72 L.Ed.2d 707 (1982) (quoting *Wirtz v. Local 153, Glass Bottle Blowers*

*Ass'n*, 389 U.S. 463, 471, 88 S.Ct. 643, 648, 19 L.Ed.2d 705 (1968)).

Another provision of Title IV addresses the removal of officers guilty of serious misconduct. Section 401(h) specifies:

> If the Secretary, upon application of any member of a *local labor organization*, finds ... that the constitution and bylaws of such labor organization do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, such officer may be removed, for cause shown and after notice and hearing, by the members in good standing voting in a secret ballot conducted by the officers of such labor organization in accordance with its constitution and bylaws insofar as they are not inconsistent with the provisions of this subchapter.

29 U.S.C. § 481(h) (emphasis added). Section 401(i) empowers the Secretary to promulgate rules and regulations for determining the adequacy of such removal procedures.[10]

In further contrast to Titles I and V, Title IV's enforcement provision provides that a union member may file a complaint with the Secretary after fulfilling certain procedural prerequisites. 29 U.S.C. § 482(a). The Secretary is then required to investigate the complaint, and must file a suit in federal district court to set aside the election if "he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied...." *Id.* at § 482(b). The district court is empowered to declare the election void if the election was not "held within the time prescribed" by section 401 of the Act or if "*the violation of section 401 ... may have affected the outcome of [the] election....*" *Id.* at § 482(c)(2) (emphasis added). The district court must then order a new election be held under the Secretary's supervision. Section 403 of the Act provides:

---

**9.** Elections for officers of "intermediate bodies" are to occur not less often than once every four years. 29 U.S.C. § 481(d).

**10.** The Secretary's regulations promulgated under this section are found at 29 C.F.R. § 417.-1–.25.

No labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this subchapter. Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this subchapter. *The remedy provided by this subchapter for challenging an election already conducted shall be exclusive.*

29 U.S.C. § 483 (emphasis supplied). Thus, Title IV "sets up an exclusive method of protecting Title IV rights...." *Calhoon v. Harvey,* 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964).

As should be evident from the above synopsis, there is an identifiable overlap between Titles I and IV and between Titles V and IV. Both Titles I and IV address the right to vote in an election; both Titles V and IV address the inappropriate use of union funds. However, Title I and Title V suits may be initiated in district court, whereas the enforcement provision for Title IV requires the litigant to file a complaint with the Secretary. Since Title IV provides an "elaborate postelection procedure aimed solely at protecting union democracy through free and democratic elections, with primary responsibility for enforcement lodged with the Secretary of Labor," *Local No. 82, Furniture & Piano Moving Drivers v. Crowley,* 467 U.S. 526, 528, 104 S.Ct. 2557, 2559, 81 L.Ed.2d 457 (1984), a litigant may not circumvent this enforcement procedure by alleging a violation of Title I, when in fact there has been a violation of Title IV. *Id.* at 540–50, 104 S.Ct. at 2565–71. *See also Calhoon,* 379 U.S. 134, 85 S.Ct. 292 (challenge against union's eligibility requirements for officers, which affect the right to nominate candidates, alleges a Title IV violation and the exclusive remedy applies); *McGuire v. Grand International Division of Brotherhood of Locomotive Engineers,* 426 F.2d 504, 508 (6th Cir.1970) ("Insofar as [plaintiff] alleges election violations specifically

dealt with in Title IV, we hold that the procedures of Title IV must be invoked, notwithstanding a concurrent offense under Title I.") *Cf. Denov v. Chicago Federation of Musicians, Local 10–208,* 703 F.2d 1034, 1037 (7th Cir.1983) (challenge relating to vote to increase dues is more specifically covered by Title I; Title I mentions dues assessments, and this suit does not challenge an election of officers); *Turner v. Dempster,* 743 F.2d 1301, 1303 (9th Cir. 1984) (same), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1361, 84 L.Ed.2d 382 (1985). Although it is perhaps less clear whether a Title V claim for damages and accounting may be maintained despite the concurrent violation of Title IV, *see, e.g., Camarata v. International Brotherhood of Teamsters,* 85 Lab.Cas. (CCH) ¶ 10,957 (D.D.C. Dec. 13, 1978) (plaintiffs barred from bringing Title V claim to set aside an election when allegation amounts to a Title IV violation); *Crowley,* 467 U.S. at 541 n. 16, 104 S.Ct. at 2566 n. 16 (suggesting Title IV does not bar actions that "do not directly challenge the validity of an election already conducted"), it is nonetheless evident that this court must determine whether this challenge to the recall election of an international union officer falls within the provinces of Title IV or Title I. If Title IV rights are implicated, resulting in an overlap between Title IV and Title I rights, then *Crowley* requires the litigant to utilize the enforcement procedures in section 402 of the Act. If Title IV rights are *not* implicated, however, then the Title IV remedy would not attach. This is a matter of first impression in federal courts of appeals.

The district court, as noted above, concluded that the claims presented were Title IV claims because the plaintiffs were alleging violations of rights which are specifically provided for in Title IV, such as the right to vote by secret ballot, and because the court believed the statutory language indicated that Title IV rights apply to all officer elections. In essence, the court held that Title IV provided the exclusive remedy for post-election challenges involv-

ing the election of officers even though a union may not be required to conduct the particular election being challenged. Although there is case language which states as a broad, general conclusion that Title IV provides a *post-election* remedy and is generally concerned with the election of officers, *see, e.g., Crowley,* 467 U.S. at 544, 104 S.Ct. at 2567 ("Congress clearly intended to lodge exclusive responsibility for post-election suits challenging the validity of a union election with the Secretary of Labor"); *Denov v. Chicago Federation of Musicians, Local 10–208,* 703 F.2d 1034, 1037 (7th Cir.1983) ("the subject matter of Title IV is the election of union officers"); *Schonfeld v. Penza,* 477 F.2d 899, 902 (2d Cir.1973), these cases were not faced with the issue before this court as to whether the Title IV protections and exclusive remedy apply to interim officer elections which are not mandated by the provisions of Title IV. Having not been faced with the correct question, these cases do not necessarily dictate a result here. The appellant and the Secretary argue that Title IV rights do not attach to an election which is not required by Title IV, and, accordingly, neither does the Title IV exclusive remedy.

### A.

■ As an initial matter, we note that there is overwhelming support for concluding that Title IV does not require an international union to provide for the removal and replacement of union officers, even upon a showing of serious misconduct. The language of section 401(h) of the Act clearly states that the Secretary can intervene if a *local* labor union does not provide adequate removal procedures; therefore, *local* labor unions must provide some mechanism whereby corrupt officials can be recalled from office. The logical extension of this provision with its reference to

only local labor unions is that a union member of a national or international union would be unable to file a complaint with the Secretary, pursuant to section 401(h), to compel the removal of an officer upon a showing that the union's constitution or bylaws did not provide an adequate mechanism for removal. *See, e.g., Vitrano v. Marshall,* 504 F.Supp. 1381 (D.D.C.1981) (members of international union could not invoke the protections of section 401(h) because the section only applies to local labor unions).

The legislative history of Title IV also supports the conclusion that Congress did not deem it necessary to require a removal procedure for international or national union officers. The Senate debates over recall elections, and the amendment to its version of the LMRDA, illustrates this point.[11] Senator Knowland proposed an amendment which would require all labor unions to provide for recall elections of union officers. This provision provided, in relevant part:

> Every *national, international, or local* labor organization engaged in an industry affecting commerce shall ... provide for the holding of a referendum ... at which each member [who is] entitled to vote ... shall be entitled to vote by secret ballot on the question of whether or not he favors any proposal specified in such petition—
>
> .    .    .    .    .
>
> (B) *to recall* any elected officer or officers of such labor organization named in such petition.

104 Cong.Rec. 11184 (June 14, 1958) (emphasis supplied).[12] Senator Knowland argued that this amendment, along with the other provisions of Title IV, was necessary to alleviate the evils associated with labor

---

**11.** The Senate debates are the only debates relating to this provision and are insightful because the Bill which was adopted by the full Congress in 1959 contained essentially the same language as the Senate bill. *See* Conf.Rep. No. 1147, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Ad. News 2503, 2506–07 (discussing differences between the Senate and House bills

relating to removal, and adopting the Senate version).

**12.** His proposed amendment would have provided for enforcement procedures through the Secretary, paralleling enforcement for other Title IV violations. 104 Cong.Rec. 11186.

organizations which had been highlighted by the McClellan Committee: one man dictatorships, corruption and lack of secret ballot voting. *See also* S.Rep. No. 187, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Ad. News 2318, 2336 (the provisions of the proposed act were designed to make union officers responsive to members by requiring "periodic elections of labor-union officers and the use of secret ballots in union elections"); H.R. Rep. No. 741, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Ad. News 2424, 2438 (same); *Wirtz*, 389 U.S. at 470, 88 S.Ct. at 647 (Title IV rights are essential for insuring " 'free and democratic' elections"). Knowland contended that just providing for "periodic elections of union officers by secret ballot" was inadequate protection from such evils. 104 Cong.Rec. 11185. The fact that a senator proposed such an amendment indicates that without such an amendment Title IV would not have covered recall elections.

The Senate did not accept Knowland's proposed amendment. Rather, believing Knowland's proposal was too expansive, Senator Ervin proposed a different amendment, presumably as a political compromise, which did not require recall procedures for international or national labor unions. This provision is essentially identical to the present section 401(h). In discussing the two amendments, different senators argued that the Knowland amendment could result in unstable union relations, 104 Cong.Rec. 11192, and that concern over corrupt international or national union officers could best be addressed by shortening their terms in office rather than requiring recall procedures. *Id.* at 11192, 11194–95.[13] It is apparent to us, that in attempting to protect union democracy while at the same time preserving union autonomy, *see Wirtz*, 389 U.S. at 470–71, 88 S.Ct. at 647–48, the Senate concluded from this balancing process, and the full Congress concurred, that requiring international unions to provide for recall elections

was an unnecessary intrusion on union autonomy.

As additional support for the conclusion that Title IV does not require international unions to provide a mechanism for recalling their officers, we note that the Secretary has interpreted section 401(h) as applying solely to *local* unions. *See* 29 C.F.R. § 417.1–.25. Deference should be paid to the "Secretary's interpretation of the statute 'unless there are compelling indications that it is wrong.' " *Donovan v. National Transient Division, International Brotherhood of Boilermakers*, 736 F.2d 618, 621 (10th Cir.1984) (quoting *E.I. Du Pont de Nemours & Co. v. Collins*, 432 U.S. 46, 55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977)), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 781, 83 L.Ed.2d 776 (1985). The language of the statute and the legislative history clearly support the Secretary's interpretation in this regard.

### B.

Having concluded that Title IV does not *require* that international unions provide in their constitution or bylaws an adequate procedure for removing officers, the remaining question is whether the Title IV enforcement provisions nonetheless apply when an international union *voluntarily adopts* officer recall procedures. In other words, can a claim which challenges an election which is not a required election under Title IV, be considered a Title IV claim? The appellees put forth three arguments as to why the election involved in the instant case must be considered a Title IV claim.

First, the appellees note that Title IV does not specifically exclude recall elections of international officers from its protective and enforcement provisions. Although this is a correct observation, it ignores the legislative history which conclusively establishes that Congress distinguished between periodic elections and recall elections and

---

**13.** The frequency of elections was noted by both the House and the Senate as a key for guaranteeing responsive representation. *See* S.Rep. No. 187, *supra,* 1959 U.S. Code Cong. & Ad. News at 2336; H.R.Rep. No. 741, *supra,* 1959 U.S. Code Cong. & Ad. News at 2438.

further concluded that only local, and not international, unions must provide for recall elections. The fact that Congress did not provide an express exclusion for international recall elections, therefore, merely begs the question since we know that Congress excluded international recall elections from the list of required elections. We believe this argument lends no support for the appellees' position.

The second argument is that section 401 of the Act sets forth only *minimum* requirements, particularly with respect to regularly scheduled elections. For instance, if a local union were to decide to hold an election every two years rather than every three years as specified in section 401(b), Title IV rights such as nomination procedures, secret balloting and poll observing would clearly apply to those elections. Therefore, the argument proceeds, a union may not escape Title IV liability by voluntarily providing more than the minimum number of elections which Title IV requires.

■■■ We agree with the appellees that Title IV would certainly apply to scheduled union officer elections that occur more frequently than required by Title IV, or that occur on an abnormal election schedule which might occur by use of a parliamentary system. This is so, however, not because we believe Title IV protections apply to *any* election of union officers, but because we believe that the procedural safeguards listed in Title IV were intended to apply solely to elections which were periodic or regular in nature. We first note that certain procedural safeguards in section 401 clearly do not purport to apply to every election. Section 401(e), for instance, relating to the nomination of candidates among other things, begins with the phrase "[i]n any election *required by this section....*" Similarly, section 401(f), relating to the use of union funds, utilizes the phrase "an election *subject to the provisions of this subchapter.*" Above, we concluded that recall elections of international officers are not *required* by Title IV; therefore, these protections would not apply according to their own terms.[14]

Further, if an office is vacated by intervening events in the interim between scheduled elections, there is nothing in Title IV which indicates that the office must be filled by an election procedure. For instance, if a vacancy were to occur as a result of an officer's death, resignation or impeachment, Title IV does not appear to require that the vacancy be filled by an election; rather, a union could seemingly fill the position by succession, appointment or otherwise. This conclusion is supported by one of the Secretary's interpretive regulations.

Title IV governs the regular periodic elections of officers in labor organizations subject to the Act. No requirements are imposed with respect to the filling by election or other method of any particular office which may become vacant between such regular elections. If, for example, a vacancy in office occurs in a local labor organization, it may be filled by appointment, by automatic succession, or by a special election which need not conform to the provisions of Title IV.... While the enforcement procedures of section 402 are not available to a member in connection with the filling of an interim

<hr>

14. The district court concluded that these restrictive phrases indicate that the provisions were applicable to elections of officers, as opposed to other types of elections. The court relied on the fact that section 401(f) of the Act did not contain the restrictive language "as required by this section," and noted that other types of elections are not governed by Title IV. While we agree that Title IV does not cover balloting unrelated to the election of union officers, *see, e.g., Nienaber v. Ohio Valley Carpenters District Council,* 652 F.2d 1284 (6th Cir.1981) (voting on bylaws); *Trail v. International Broth-* erhood of Teamsters, 542 F.2d 961, 966 (6th Cir.1976) (voting on collective bargaining agreements); *Bunz v. Moving Picture Machine Operators' Protective Union Local 224,* 567 F.2d 1117 (D.D.C.1977) (referendums authorizing assessments), we do not believe this fact is relevant to the question presented in this case since it is evident from the face of Title IV that its terms would not apply in such circumstances. Further, in light of the legislative history which we have discussed, we do not find the absence of restrictive language in section 401(f) to be a meaningful inconsistency.

vacancy, remedies may be available to an aggrieved member under section 102 of the Act [Title I] or under any pertinent State or local law.

29 C.F.R. § 452.25 (1985). Although the district court acknowledged the Secretary's regulation, the court appears to have given the regulation no weight whatsoever, concluding simply that "the Secretary's regulation is nonbinding."[15] While it is true that the Secretary's regulations are not controlling on federal courts, it is equally clear that "[w]hen faced with a problem of statutory construction, [federal courts] show[ ] great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). *Cf. McCown v. Secretary of Health & Human Services*, 796 F.2d 151, 157–58 (6th Cir. 1986). We find that there are no "compelling indications that [the Secretary's interpretation] is wrong," *E.I. Du Pont de Nemours & Co. v. Collins*, 432 U.S. 46, 55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977), and believe the Secretary's interpretation is fully supported by the statutory language and the legislative history.

Additionally, were a union to decide to fill an interim vacancy through an election procedure, there is nothing to indicate that the union must adhere to all Title IV requirements. In fact, section 401 does not specify which procedures a local union must adopt for recall elections but only that local labor unions are required to adopt adequate removal procedures. Rather, Title IV empowers the Secretary to adopt regulations for determining when a removal procedure is adequate. *See* 29 U.S.C. § 481(i); 29 C.F.R. § 417.1–.25. It therefore cannot be assumed that procedural protections in Title IV attach when an international labor union voluntarily provides a recall procedure. If requiring international unions to provide a recall procedure was arguably considered an unnecessary intrusion on union autonomy, it fol-

lows that applying Title IV protections to a voluntarily adopted election would likewise be an undesired intrusion.

Appellees' final argument in support of the contention that a post-election challenge involving an international recall election is a Title IV claim, is premised on language in section 402(a) of the LMRDA, the enforcement provision. This section specifies that a union member

> may file a complaint with the Secretary ... after alleging the violation of any provision of section 401 of this title (*including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers*).

29 U.S.C. § 482(a)(emphasis added). The appellees assert that this language requires that a challenge to any recall election conducted pursuant to a union's constitution or bylaws is subject to Title IV enforcement procedures.

We, along with the Ninth Circuit, do not believe that the parenthetical emphasized above expands the Secretary's authority beyond that which is granted by section 401 of the Act. *Donovan v. Hotel Employees Union*, 700 F.2d 539, 545 (9th Cir. 1983). First, the parenthetical statement, by using the word "including," merely qualifies the previous phrase that there must be a violation of section 401 for the section 402 remedy to become applicable. The only provision in section 401 relating to the removal of officers is section 401(h) which only pertains to local labor unions. Second, the legislative history, as reviewed by the court in *Donovan*, indicates that the parenthetical was merely a "cosmetic change," which did not expand the Secretary's authority, nor did it expand the application of Title IV rights.

In *Donovan*, the Secretary argued that this parenthetical permitted him to force a union to abide by the union's admittedly adequate removal procedures. The Ninth

---

**15.** In so concluding, the district court quoted from 29 C.F.R. § 452.1(b), one of the Secretary's regulations which states in part that "[t]he cor-

rectness of an interpretation can be determined finally and authoritatively only by the courts."

Circuit held that section 401(h) only empowered the Secretary to intervene if the local labor "union's constitution and bylaws provide an *inadequate* removal procedure." 700 F.2d at 542 (emphasis added). The court reasoned that the Secretary could not intervene if the procedures were adequate, even if they were not followed by the union. The court held, therefore, that in order for the Secretary to intervene, there must be an independent violation of section 401, which in that case would have been the existence of inadequate removal procedures.

In the instant case, there could not have been an independent violation of section 401 because the international union was not required to provide *any* kind of removal procedures under Title IV. Further, it would be anomalous to conclude that the Secretary could intervene in this situation where recall procedures, whether adequate or inadequate, were not required, but the Secretary possibly could *not* intervene when the local union fails to follow its statutorily required adequate procedures. Under such circumstances we believe that union members may only find protection from other provisions in the LMRDA or state law. *See* 29 C.F.R. § 452.25.

We conclude, therefore, that the Title IV enforcement procedures do not apply when the complaint does not state a Title IV claim; in order for there to be a Title IV claim, the election being challenged must be the type of election specifically required by Title IV. The legislative history, statutory language and applicable regulations support the conclusion that international recall elections are not required by Title IV, and are therefore not subject to Title IV's exclusive remedy. Since Title IV rights are not involved in this case, *Crowley's* prohibition against filing Title I challenges to previously conducted elections does not apply since there is not an overlap of Title I and Title IV rights; consequently, the district court erred in granting summary judgment for the defendants on this basis. Further, the district court's analysis with respect to appellants' Title I and Title V claims must fail since it was premised on the erroneous conclusion that Title IV was applicable.[16] Accordingly, this case is REVERSED and REMANDED for further proceedings consistent with this opinion.

---

16. We do not express an opinion, of course, as to whether appellants have succeeded in stating claims under Titles I and V or state law. Nor do we address which claims, if any, might be mooted by the outcome of an upcoming election for BLE President. *See, e.g., Lodge 1380, Brotherhood of Railway Clerks v. Dennis*, 625 F.2d 819, 822–23 (9th Cir.1980); *Canez v. Guerrero*, 707 F.2d 443, 445–47 (9th Cir.1983); *Kerr v. Screen Extras Guild, Inc.*, 466 F.2d 1267, 1269–70 (9th Cir.1972), *cert. denied*, 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1973).